# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| MICHAEL C. WORTMAN et al., | ) | |
|     Plaintiffs, | ) ) | |
| vs. | ) ) | 3:12-cv-00045-RCJ-VPC |
| COUNTRYWIDE HOME LOANS, INC. et al., | ) ) ) | **ORDER** |
|     Defendants. | ) ) | |

This is a standard foreclosure case involving one property. The Complaint filed in state court lists eight causes of action: (1) Fair Debt Collection Practices Act violations; (2) Violations of the Nevada Deceptive Trade Practices Act; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; (4) Violations of Nevada Revised Statutes ("NRS") 107.080; (5) Quiet Title; (6) Fraud; (7) Slander of Title; and (8) Abuse of Process. The case is not part of Case No. 2:09-md-02119-JAT in the District of Arizona but appears eligible for transfer. Defendants have moved to dismiss and to expunge the lis pendens. For the reasons given herein, the Court grants the motion to dismiss in part, dismissing all claims except those for violations of NRS 107.080 and quiet title. The Court denies the motion to expunge lis pendens.

**I.   THE PROPERTY**

On August 14, 2003, Plaintiffs Michael C. and Emberlee Wortman purchased real property located at 564 Sonora Pass Ct., Sparks, NV 89436 (the "Property"), giving a $217,800

1  promissory note to lender Platinum First Mortgage, LP ("PFM") secured by a deed of trust

2  ("DOT") against the Property to be administered by trustee Stewart Title of Northern Nevada.

3  (*See* DOT 1–3, Aug. 14, 2003, ECF No. 9-2).  On April 16, 2004, Plaintiffs arranged a home

4  equity line of credit ("HELOC") with lender Wells Fargo Bank, N.A. ("Wells Fargo") in a

5  maximum amount of $42,600, secured by a DOT against the Property to be administered by

6  trustee American Securities Co. of Nevada ("ASCN"). (*See* First HELOC DOT 1–2, Apr. 16,

7  2004, ECF No. 9-3).

8        On December 10, 2004, Plaintiffs refinanced the Property with lender Countrywide Home

9  Loans, Inc. ("Countrywide") for $296,000, giving Countrywide a DOT to be administered by

10 trustee CTC Real Estate Services ("CTC"). (*See* Refinance DOT 1–4, Dec. 10, 2004, ECF No. 9-

11 4).  Mortgage Electronic Registration Systems, Inc. ("MERS") was appointed as the lender's

12 "nominee." (*See id.* 2–3).  On November 6, 2006, Plaintiffs arranged a second HELOC with

13 lender Clearstar Financial Credit Union ("Clearstar") in a maximum amount of $49,383, secured

14 by a DOT against the Property to be administered by trustee Stewart Title Co. (*See* Second

15 HELOC DOT 1–2, Nov. 6, 2006, ECF No. 9-5).

16       First American Title Insurance Co., as agent for Recontrust Co., N.A. ("Recontrust") filed

17 a notice of default ("NOD") against the Property based on a default on the Refinance DOT of

18 unspecified amount. (*See* First NOD 1–2, Jan. 28, 2010, ECF No. 9-7).  MERS then transferred

19 the note and Refinance DOT to the Bank of New York Mellon ("Mellon"), as trustee for a

20 mortgage-backed security. (*See* Assignment, Jan. 29, 2010, ECF No. 9-6).[1]  On the same date,

21 BAC Home Loans Servicing, LP ("BAC"), formerly known as Countrywide, as purported

22

---

23     [1]This simultaneous transfer of the interest in the note to Mellon by MERS in its capacity as "nominee" and of MERS' own interest in the Refinance DOT in its capacity as "beneficiary"
24 cured any split created at the inception of the mortgage between Countrywide's and MERS' respective interests in the note and Refinance DOT. *See generally Edelstein v. Bank of New York*
25 *Mellon*, 128 Nev. Adv. Op. 48 (2012).

attorney in fact for Mellon, substituted Recontrust as trustee on the Refinance DOT. (*See* Substitution, Jan. 29, 2010, ECF No. 9-8). Recontrust then rescinded the First NOD, (*see* Rescission, May 20, 2010, ECF No. 9-9), and filed a new NOD against the Property based on a default on the Refinance DOT of unspecified amount, (*see* Second NOD 1–2, Apr. 27, 2011, ECF No. 9-10). The parties participated in the state Foreclosure Mediation Program ("FMP") but failed to resolve the default. (*See* FMP Certificate, June 9, 2011, ECF No. 9-11). Recontrust noticed trustee's sales ("NOS") for October 31, 2011 and April 5, 2012. (*See* First NOS, Oct. 7, 2011, ECF No. 9-12; Second NOS, Mar. 13, 2012, ECF No. 9-13). Plaintiff filed the Complaint in state court on October 31, 2011. Defendants removed.

## II.   ANALYSIS

The operative NOD (the Second NOD) was filed before October 1, 2011. Therefore AB 284's amendments to Chapter 106 and 107 do not apply in this case. On May 20, 2011, the Governor approved Assembly Bill 284, which, *inter alia*, added the following conditions to a trustee's sale under NRS section 107.080(2)(c):

> The beneficiary, the successor in interest of the beneficiary or the trustee first executes and causes to be recorded in the office of the recorder of the county wherein the trust property, or some part thereof, is situated a notice of the breach and of the election to sell or cause to be sold the property to satisfy the obligation; **which, except as otherwise provided in this paragraph, includes a notarized affidavit of authority to exercise the power of sale stating, based on personal knowledge and under the penalty of perjury:**
>
> **(1) The full name and business address of the trustee or the trustee's personal representative or assignee, the current holder of the note secured by the deed of trust, the current beneficiary of record and the servicers of the obligation or debt secured by the deed of trust;**
>
> **(2) The full name and last known business address of every prior known beneficiary of the deed of trust;**
>
> **(3) That the beneficiary under the deed of trust, the successor in interest of the beneficiary or the trustee is in actual or constructive possession of the note secured by the deed of trust;**
>
> **(4) That the trustee has the authority to exercise the power of sale with**

> **respect to the property pursuant to the instruction of the beneficiary of record and the current holder of the note secured by the deed of trust;**
>
> **(5) The amount in default, the principal amount of the obligation or debt secured by the deed of trust, a good faith estimate of all fees imposed and to be imposed because of the default and the costs and fees charged to the debtor in connection with the exercise of the power of sale; and**
>
> **(6) The date, recordation number or other unique designation of the instrument that conveyed the interest of each beneficiary and a description of the instrument that conveyed the interest of each beneficiary.**

Assemb. B. 284 § 9, 76th Leg., Reg. Sess. (Nev. 2011) (emphasis added).  The emphasis in the above quotation indicates the added language.  The amendments were originally to become effective on July 1, 2011, *see id.* § 15, and were to apply to all notices of default filed on or after that date, *see id.* § 14.5(4).  However, on June 20, 2011, the Governor approved Assembly Bill 273, which amended the effective date of Assembly Bill 284 to October 1, 2011 and amended § 14.5 of the bill to provide that the amendments to NRS section 107.080 would apply only to notices of default filed on or after October 1, 2011. *See* Assemb. B. 273 § 5.9, 76th Leg., Reg. Sess. (Nev. 2011).  Furthermore, Chapter 106 requires the recordation of any assignments of debt secured by a deed of trust before a trustee's sale may occur:

> Any assignment of a mortgage of real property, or of a mortgage of personal property or crops recorded prior to March 27, 1935, and any assignment of the beneficial interest under a deed of trust **must** be recorded, **in the office of the recorder of the county in which the property is located**, and from the time any of the same are so filed for record shall operate as constructive notice of the contents thereof to all persons.  **A mortgage of real property, or a mortgage of personal property or crops recorded prior to March 27, 1935, which has been assigned may not be enforced unless and until the assignment is recorded pursuant to this subsection. If the beneficial interest under a deed of trust has been assigned, the trustee under the deed of trust may not exercise the power of sale pursuant to NRS 107.080 unless and until the assignment is recorded pursuant to this subsection.**

Assemb. B. 284 § 1, 76th Leg., Reg. Sess. (Nev. 2011) (emphases added).  The emphasis in the above quotation indicates the added language.  Like the amendments to NRS section 107.080, the amendments to NRS section 106.210 were originally to go into effect on July 1, 2011. *See id.*

§ 15. However, Assembly Bill 273 changed the effective date of the amendment to October 1, 2011 and also amended the application of the recordation requirement to assignments made on or after October 1, 2011. *See* Assemb. B. 273 § 5.9, 76th Leg., Reg. Sess. (Nev. 2011).

The pre-AB 284 versions of Chapters 106 and 107 therefore apply in this case. Still, the foreclosure may have been statutorily improper. The problem lies in the Substitution, wherein BAC (formerly Countrywide), as purported attorney in fact for Mellon, substituted Recontrust as trustee on the Refinance DOT. It is not factually clear that BAC was Mellon's agent. BAC's own claim of agency on the Substitution will not be accepted as true at the dismissal stage. The Court will therefore deny the motion to dismiss as against the Chapter 107 and quiet title claims, though the remaining claims fail for reasons given in substantially identical cases.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 9) is GRANTED in part and DENIED in part. All claims are dismissed except those for violations of NRS 107.080 and quiet title.

IT IS FURTHER ORDERED that the Motion to Expunge Lis Pendens (ECF No. 10) is DENIED.

IT IS SO ORDERED.

Dated this 9th day of October, 2012.

_____
ROBERT C. JONES
United States District Judge