UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| MICHAEL C. WORTMAN et al., | ) | |
| Plaintiffs, | ) | |
| | ) | 3:12-cv-00045-RCJ-VPC |
| vs. | ) | |
| | ) | |
| COUNTRYWIDE HOME LOANS, INC. et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

This is a standard foreclosure case involving one property. Defendants have moved for summary judgment and to expunge the lis pendens. For the reasons given herein, the Court denies the motion.

**I.    THE PROPERTY**

On August 14, 2003, Plaintiffs Michael C. and Emberlee Wortman purchased real property located at 564 Sonora Pass Ct., Sparks, NV 89436 (the "Property"), giving a $217,800 promissory note to lender Platinum First Mortgage, LP ("PFM") secured by a deed of trust ("DOT") against the Property to be administered by trustee Stewart Title of Northern Nevada. (*See* DOT 1–3, Aug. 14, 2003, ECF No. 9-2). On April 16, 2004, Plaintiffs arranged a home equity line of credit ("HELOC") with lender Wells Fargo Bank, N.A. ("Wells Fargo") in a maximum amount of $42,600, secured by a DOT against the Property to be administered by trustee American Securities Co. of Nevada ("ASCN"). (*See* First HELOC DOT 1–2, Apr. 16,

2004, ECF No. 9-3).

On December 10, 2004, Plaintiffs refinanced the Property with lender Countrywide Home Loans, Inc. ("Countrywide") for $296,000, giving Countrywide a DOT to be administered by trustee CTC Real Estate Services ("CTC"). (*See* Refinance DOT 1–4, Dec. 10, 2004, ECF No. 9-4). Mortgage Electronic Registration Systems, Inc. ("MERS") was appointed as the lender's "nominee." (*See id.* 2–3). On November 6, 2006, Plaintiffs arranged a second HELOC with lender Clearstar Financial Credit Union ("Clearstar") in a maximum amount of $49,383, secured by a DOT against the Property to be administered by trustee Stewart Title Co. (*See* Second HELOC DOT 1–2, Nov. 6, 2006, ECF No. 9-5).

First American Title Insurance Co., as agent for Recontrust Co., N.A. ("Recontrust") filed a notice of default ("NOD") against the Property based on a default on the Refinance DOT of unspecified amount. (*See* First NOD 1–2, Jan. 28, 2010, ECF No. 9-7). MERS then transferred the note and Refinance DOT to the Bank of New York Mellon ("Mellon"), as trustee for a mortgage-backed security. (*See* Assignment, Jan. 29, 2010, ECF No. 9-6).[1] On the same date, BAC Home Loans Servicing, LP ("BAC"), formerly known as Countrywide, as purported attorney in fact for Mellon, substituted Recontrust as trustee on the Refinance DOT. (*See* Substitution, Jan. 29, 2010, ECF No. 9-8). Recontrust then rescinded the First NOD, (*see* Rescission, May 20, 2010, ECF No. 9-9), and filed a new NOD against the Property based on a default on the Refinance DOT of unspecified amount, (*see* Second NOD 1–2, Apr. 27, 2011, ECF No. 9-10). The parties participated in the state Foreclosure Mediation Program ("FMP") but failed to resolve the default. (*See* FMP Certificate, June 9, 2011, ECF No. 9-11). Recontrust

---

[1] This simultaneous transfer of the interest in the note to Mellon by MERS in its capacity as "nominee" and of MERS' own interest in the Refinance DOT in its capacity as "beneficiary" cured any split created at the inception of the mortgage between Countrywide's and MERS' respective interests in the note and Refinance DOT. *See generally Edelstein v. Bank of New York Mellon*, 128 Nev. Adv. Op. 48 (2012).

noticed trustee's sales ("NOS") for October 31, 2011 and April 5, 2012. (*See* First NOS, Oct. 7, 2011, ECF No. 9-12; Second NOS, Mar. 13, 2012, ECF No. 9-13).

Plaintiffs filed the Complaint in state court on October 31, 2011, listing eight causes of action: (1) Fair Debt Collection Practices Act violations; (2) Violations of the Nevada Deceptive Trade Practices Act; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; (4) Violations of Nevada Revised Statutes ("NRS") 107.080; (5) Quiet Title; (6) Fraud; (7) Slander of Title; and (8) Abuse of Process. Defendants removed and moved to dismiss and to expunge the lis pendens. The Court granted the motion to dismiss in part, dismissing all claims except those for violations of NRS 107.080 and quiet title. Defendants have now moved for summary judgment and to expunge the lis pendens.

## II.     LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In determining summary judgment, a court uses a burden-shifting scheme:

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by

presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   ANALYSIS**

At the dismissal stage, the Court noted that the foreclosure may have been statutorily improper.  The problem lied in the Substitution, wherein BAC (formerly Countrywide), as

purported attorney in fact for Mellon, substituted Recontrust as trustee on the Refinance DOT. It was not factually clear that BAC was Mellon's agent. BAC's own claim of agency on the Substitution was not sufficient. The Court therefore denied the motion to dismiss as against the Chapter 107 and quiet title claims.

Defendants have now moved for summary judgment against those two claims. They introduce two exhibits in support. Exhibit B is another copy of the Substitution, which the Court has already noted is itself no evidence of BAC's agency on behalf of Mellon. Exhibit A is the declaration of a person whose name is unclear. (*See* Decl., Nov. 16, 2012, ECF No. 23-1, at 2). The declarant's name appears in two places on the declaration: the signature and the preamble at the top of the second page, where the name is hand-written on a blank line. The given name appears to be "Antoinette L." The surname appears to be "Overfeld," "Overfold," "Overfield," or "Overfielsl." Though unlikely, the first four letters of the surname could also reasonably be read as "Quer." In any case, the name of the declarant is not entirely clear, and it is nowhere typed on the declaration. The declarant attests to be an "Assistant Vice President" for Bank of America, N.A. (*See id.* ¶ 2). She attests that Vice President of Mellon Diane Picket and Managing Director of Mellon Mauro Palladino executed a power of attorney (the "POA") (which is attached) appointing BAC as Mellon's attorney-in-fact for, *inter alia*, appointing substitute trustees. (*See id.* ¶ 5). The attached POA is signed by those persons, and it is notarized as having been signed on May 6, 2009, which is prior to the Substitution. (*See* POA, May 6, 2009, ECF No. 23-1, at 6). The POA gives BAC the power to substitute trustees as to deeds of trust that are part of "certain Pooling and Servicing Agreements," but those agreements are not further defined. (*See id.*). It is impossible to tell from this evidence whether Plaintiffs' mortgage falls within the "certain Pooling and Servicing Agreements" for which Mellon appears to have appointed BAC as its attorney-in-fact for the purposes of trustee substitution. If the POA granted the powers as to "all" or "any" mortgages, it would be enough, but the POA specifies only "Mortgage[s] in

connection with the transactions contemplated in those certain Pooling and Servicing Agreements." (*Id.*). This limitation built directly into the POA coupled with the lack of evidence concerning whether Plaintiffs' own mortgage falls within or without the limitation, leaves a genuine issue of material fact for trial. Defendants have failed to carry their initial burden on summary judgment.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment and to Expunge Lis Pendens (ECF No. 23) is DENIED.

IT IS SO ORDERED.

Dated this 11th day of March, 2013.

_____
ROBERT C. JONES
United States District Judge